# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER N. NOFSKER, | : | |
| | : | |
| Plaintiff, | : | No. 3:20-cv-00193 |
| | : | |
| v. | : | (Saporito, M.J.) |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM</u>

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Heather N. Nofsker's ("Nofsker") claim for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act.   This matter is before the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9; Doc. 10).

For the reasons stated herein, the Commissioner's decision will be **VACATED**, and the case will be **REMANDED** for further consideration.

## I.    *Background and Procedural History*

Nofsker is an adult individual born July 8, 1974, who was 37 years old at the time of her alleged onset date of disability—February 24, 2012. (Tr. 54, 854). Nofsker's age at the onset date makes her a "younger person" under the Social Security Act. *See* 20 C.F.R. § 404.1563(c). Nofsker graudated from high school in 1992 and has no vocational training. (Tr. 882). Prior to her alleged onset date, Nofsker served as a convenience store worker and a pillow filler. (Tr. 883).

On October 2, 2013, Nofsker protectively filed for disability insurance benefits and supplemental security income pursuant to Title II and Title XVI of the Social Security Act. (Tr. 19). In her application, Nofsker alleged that she became disabled beginning February 24, 2012, as a result of diabetes, depression, anxiety, stomach issues, lower back problems, status post back surgery, leg pain, and insomnia. (Tr. 208). Nofsker's claim was initially denied on November 24, 2013. (Tr. 19). Thereafter, Nofsker filed a timely request for an administrative hearing on September 25, 2013, and it was granted. (*Id*.). Nofsker, represented by counsel, appeared and testified before ALJ, Therese A. Hardiman, on January 20, 2015, in Wilkes Barre, Pennsylvania. (Tr. 19, 38). In

addition, an impartial vocational expert, Karen Kane appeared and testified during the administrative hearing. (Tr. 38). At the time of this hearing Nofsker was 40 years old and resided in Mahanoy City, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 38-40). By a decision dated April 14, 2015, the ALJ denied Nofsker's applications for benefits. (Tr. 16-33). On October 25, 2016, Nofsker appealed the ALJ's decision to this Court. *Nofsker*, 3:16-cv-02151 (Doc. 1). On August 31, 2018, the Court ruled that the Commissioner's decision was not supported by substantial evidence and remanded the matter to the Commissioner to re-evaluate Nofsker's claim and include her obesity and mental health ailments as severe impairments. (*Id.*). (Doc. 25, at 14).

Following this remand a second administrative hearing was conducted on April 16, 2019, before ALJ, Susan Torres. (Tr. 873). Accordingly, Nofsker, represented by counsel, appeared and testified along with an impartial vocational expert ("VE"), Sheryl Bustin. (*Id.*). At the time of the second hearing, Nofsker was 44 years old and resided with her family in Mahony City, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 207-08). Less than two months later, in a written decision dated June 19, 2019, the ALJ denied Nofsker's application for

benefits. (Tr. 851). Nofsker sought further review of her claims by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied for review on December 6, 2019. (Tr. 835). Nofsker subsequently filed an appeal to this Court on February 4, 2020, arguing that the ALJ's decision was not supported by substantial evidence. (Doc. 1). On April 17, 2020, the Commissioner filed his answer, in which he maintains that the ALJ's decision is correct and in accordance with the law and regulations. (Doc. 7, at 2). This matter has been fully briefed by the parties and is ripe for decision. (Doc. 17; Doc. 18; Doc. 21).

On this score, Nofsker's treatment history discloses that she suffers from a number of physical and mental health impairments, including diabetes, depression, anxiety, stomach issues, lower back problems, status post back surgery, leg pain, and insomnia. (Tr. 208). Specifically, Nofsker reported and testified that she cannot work due to chronic pain and that this pain has not improved despite treatment. (Tr. 859). Nofsker further testified that she can be very nasty with her husband and daughter due to her depression and withdraws to her room when she is short-tempered. (*Id*.). Additionally, Nofsker testified that she has no

strength in her hands; that the plates and screws in her back affect her mobility; and that she takes prescription medication to help her sleep at night. (*Id.*).

At the outset, the medical record reflects that Nofsker underwent a range of treatment for her back, including epidural injections and back surgery. (Tr. 252, 859, 1264). Nofsker, however, continues to report significant pain. (Tr. 252, 859). In March 2013, Nofsker was advised that no further surgery was appropriate and her treating physician recommended a spinal cord stimulator and weight loss. (Tr. 253). Presently, the record reflects that Nofsker suffers from post laminectomy syndrome with possible lumbosacral radiculitis. (Tr. 1158-1159). In September 2017, Nofsker reported constant pain and in August 2018, the treatment notes demonstrate complaints of worsening and constant lumbar pain, with reports of numbness and tingling in her lower extremity. (Tr. 1246-1249). In October 2018, Nofsker reported debilitating pain, describing it as burning, aching, stabbing pain, which radiates to her left lower limb in L5 dermatomal distribution with associated numbness and tingling. (Tr. 1243). To manage her pain, Nofsker was prescribed Naproxen, which she reported provided some

relief. (*Id*.). In January 2019, Nofsker reported lower back and lower extremity pain and indicated that the spinal cord stimulator did not alleviate her symptoms and she wanted it removed. (Tr. 1233-34).

With regard to her diabetes, the medical record reflects that Nofsker suffers from Type II diabetes, with long-term insulin use. (Tr. 1475-79). Specifically, the treatment notes reveal that Nofsker's diabetes is not well-controlled; that she does not exercise; that she overeats most days; and that she experiences paresthesia in both feet. (Tr. 1185). The record further reflects that Nofsker suffers from obesity, as she testified that she is 5'8 and weighs approximately 254 pounds. (Tr. 885). Nofsker visits a nutritionist for her diabetes and obesity. (Tr. 885-86). Nofsker, however, reported that she experiences difficulty following her meal plans due to her depression. (Tr. 861).

As for her mental health impairments, Nofsker testified and reported that she suffers from depression and anxiety. (Tr. 208). Nofsker's mental health treatment includes routine follow-up visits with a psychiatrist and periodic treatment with a therapist. (Tr. 390-413, 553-68, 1170-80). Due to her mental health conditions, Nofsker was prescribed Cymbalta, Trazodone, and Risperidone. (Tr. 553-68).

As for opinion evidence, there is no medical opinion of record. The only opinion in the medical record consists of a Clinical Assessment of Pain questionnaire prepared by physician-assistant, Mr. John Yarwood ("Mr. Yarwood") on March 22, 2019.[1] (Tr. 1368). In the assessment, Mr. Yarwood opined that Nofsker's pain was present to such an extent as to be distracting to adequate performance of daily activities or work. (*Id*.). Mr. Yarwood further indicated that physical activity, such as walking, standing, and bending would greatly increase Nofsker's pain causing abandonment of tasks related to daily activities or work; and that Nofsker's medication(s) would limit her effectiveness in the work place due to distraction, inattention, and drowsiness, such that Nofsker would be off-task between 10 percent and 15 percent of a workday. (*Id*.).

Lastly, Mr. Yarwood noted that Nofsker underwent spinal fusion in 2010 and that her back pain has persisted requiring regular visits to the pain management clinic. (*Id*.). The ALJ afforded Mr. Yarwood's opinion limited weight, concluding that neither his treatment records nor records

---

[1] The Court is constrained to observe that under the then-existing regulations, physician assistants are not 'acceptable medical sources' that can provide a medical opinion pursuant to the regulations. *See* 20 C.F.R. § 404.1502(a)(ii)(8); *see also* 20 C.F.R. § 404.1527(a)(1).

from other treating sources supported his conclusions. (Tr. 862).

## II.   *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being

supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *Id.* § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a); *Id.* § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *Id.* § 1382c(a)(3)(D).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; *id.* § 416.910.

equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a); *Id.* § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *Id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512; *Id.* § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Id.*

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1); *id.* § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2); *id.* § 416.945(a)(2).

§ 416.912(f); *Mason*, 994 F.2d at 1064.

## III. Discussion

In her June 2019 decision denying Nofsker's claim for benefits, the ALJ evaluated Nofsker's application for benefits at each step of the sequential process. In that decision, the ALJ first concluded that Nofsker met the insured status requirements of the Social Security Act through March 31, 2014. (Tr. 856). At step one, the ALJ concluded that Nofsker had not engaged in substantial gainful activity since February 24, 2012, her alleged onset date. (*Id.*).

At step two, the ALJ found that the following impairments were medically determinable and severe during the relevant period: lumbar degenerative disc disease, status post surgery, obesity, diabetes, polyneuropathy, depression, and anxiety. (*Id.*). The ALJ further found that Nofsker's bilateral carpal tunnel syndrome should be added as a severe impairment as of early 2018. (Tr. 856-57).

At step three, the ALJ found that Nofsker did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 27-31). Between

steps three and four, the ALJ fashioned an RFC considering Nofsker's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that [Nofsker] has the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. [Nofsker] can occasionally balance, stoop, kneel, crouch, and crawl and frequently handle and finger bilaterally. [Nofsker] should avoid concentrated exposure to extreme cold and heat, wetness, humidity, poor ventilation, and hazards such as heights and moving machinery. [Nofsker] can understand, remember, and carry out simple instructions in an environment free of fast-paced production requirements, involving only simple work-related decisions with few workplace changes.

(Tr. 858-59).

At step four, the ALJ found that Nofsker was capable of performing her past relevant work as a pillow filler. (Tr. 863). At step five, the ALJ determined that based on Nofsker's age, education, work experience, and RFC that there were a significant number of jobs in the national economy that Nofsker could perform, including working as a bakery worker on a conveyor line, machine tender laminating, and a counter clerk photofinishing. (Tr. 864).

Nofsker contends that the decision of the ALJ is not supported by substantial evidence of record and raises three issues on appeal attacking

various aspects of the ALJ's decision. We agree. We shall address each argument seriatim.

## A. *Substantial Evidence Does Not Support the ALJ's RFC Assessment*

Nofsker's first claim of error, challenges the ALJ's RFC determination. (Doc. 17, at 4-9). In pertinent part, the ALJ confined Nofsker to a limited range of light work with additional limitations to address her medical impairments. (Doc. 17, at 5). In doing so, the ALJ discounted the opinion of physician assistant, Mr. Yarwood. (Doc. 17, at 5-6). Mr. Yarwood is the only opinion in the medical record which provides somewhat of an assessment of Nofsker's functional limitations concerning her ability to work. (Doc. 17, at 5-6).[6] Nofsker argues that the ALJ's RFC determination must be supported by an opinion of a medical professional or an assessment from a physician regarding a claimant's functional limitations. (Doc. 17, at 4-9). Additionally, Nofsker asserts that while the ALJ is permitted to evaluate the credibility of a claimant and weigh the medical evidence presented, the ALJ cannot use the record

---

[6] To reiterate, the Court is constrained to indicate that under the then-existing regulations, physician assistants are not 'acceptable medical sources' that can provide a medical opinion pursuant to the regulations. *See* 20 C.F.R. § 404.1502(a)(ii)(8); *see also* 20 C.F.R. § 404.1527(a)(1).

evidence to arrive at his or her own conclusions regarding a claimant's physical capabilities. (Doc. 17, at 8).

In response, the Commissioner argues that the regulations empower the ALJ, not a physician, to make the ultimate RFC determination based on all the record evidence. (Doc. 18, at 13). The Commissioner further asserts the *Chandler* court endorsed this notion in holding that a claimant's RFC is an administrative finding for the ALJ, not a treating or other physician. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).

As correctly asserted by the Commissioner, the Court of Appeals has ruled that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-

8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

While the Commissioner correctly asserts that the RFC is an administrative finding rather than a medical finding, "[t]here is an undeniable medical aspect to an RFC determination." *Barnett v. Berryhill*, No. 3:18-CV-637, 2018 WL 7550259, at *4 (M.D. Pa. Dec. 10, 2018). In relevant part, the RFC entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. *Barnett v. Berryhill*, No. 3:18-CV-637, 2018 WL 7550259, at *4 (M.D. Pa. Dec. 10, 2018). Therefore, "rarely can a decision be made regarding [a] claimant's RFC without an assessment from a physician regarding [the] functional abilities of [a] claimant." *See Donat v. Berryhill*, No. 17-5096 2018 WL 3186953, at *4 (E.D. Pa. Jun. 28, 2018); *see also Gormont v. Astrue*, No. 11-2145 2013 WL 791455 (M.D. Mar. 4,

2013). "Although an ALJ is entitled to resolve conflicts in the evidence and determines the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *See Donat v. Berryhill*, No. 17-5096 2018 WL 3186953, at *4 (E.D. Pa. Jun. 28, 2018); *see also Doak*, 790 F.2d at 29 (holding that no physician suggested that the activity Doak could perform was consistent with the definition of light work, thus the ALJ's conclusion that he could was not supported by substantial evidence); 20 C.F.R. § 404.1545.

In this case, Nofsker alleges that the following physical and mental health conditions limit her ability to work: diabetes, depression, anxiety, stomach issues, lower back problems, status post back surgery, leg pain, and insomnia. (Tr. 208). Upon review of the medical record, the ALJ concluded that the following impairments were medically determinable and severe during the relevant period: lumbar degenerative disc disease, status post surgery, obesity, diabetes, polyneuropathy, depression, anxiety, and carpal tunnel syndrome. (Tr. 856-57).

Subsequently, between steps three and four of the sequential process, the ALJ determined that Nofsker could perform a limited range

of light work with additional limitations to address her medical impairments. (Tr. 858-59). The ALJ based this determination solely on comparing Nofsker's subjective complaints to raw medical data from her treatment records to arrive at an RFC of light work. No acceptable medical source assessed Nofsker's functional capacity and no treating physician opined on the effects of her lumbar degenerative disc disease, status post surgery, obesity, diabetes, polyneuropathy, depression, anxiety, and carpal tunnel syndrome on her ability to perform a limited range of light work. Therefore, the Court is left to speculate how Nofsker's physical impairments affect her RFC, which this Court cannot do. *See Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp.2d 761, 779 (W.D. Pa. 2013); *see also Gormont v. Astrue*, 3:11-CV-02145, 2013 WL 791455, at *8 (M.D. Pa. Mar. 4, 2013).

Because the Court cannot speculate as to Nofsker's physical and mental impairments and their effect on her RFC assessment, we find that the ALJ's RFC is not supported by substantial evidence.

### B. Substantial Evidence Does Not Support the ALJ's Assignment of Limited Weight to the Opinions of Mr. Yarwood and Mr. Christopher Mlyneck ("Mr. Mlyneck")

Nofsker's second claim of error, challenges the ALJ's consideration of the opinion of physician assistant, Mr. Yarwood and the third-party opinions of her ex-husband, Mr. Mlyneck. (Doc. 18, at 19-26). It is well established that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Thus, as correctly asserted by the Commissioner, the power to accept or reject evidence in light of the broad record belongs to the ALJ, not to treating or other physicians. However, an ALJ cannot rely only on the evidence that supports his or her

conclusion, but also must explicitly weigh all relevant, probative, and available evidence, and provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. *See Gleason v. Colvin*, 152 F. Supp.3d 364, 386 (M.D. Pa. 2015); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

### *1. Opinion of Physician Assistant, Mr. Yarwood*

First, Nofsker alleges that the ALJ erred in weighing the opinion of Mr. Yarwood, Nofsker's physician assistant. (Doc. 18, at 19-23). In relevant part, Mr. Yarwood opined that Nofsker's pain was present to such an extent as to be distracting to adequate performance of daily activities or work; that physical activity, such as walking, standing, and bending would greatly increase her pain causing abandonment of tasks related to daily activities or work; and that her medication(s) would limit her effectiveness in the work place due to distraction, inattention, drowsiness, such that she would be off-task between ten percent and 15 percent of a workday. (Tr. 1368). Nofsker asserts that the ALJ rejected Mr. Yarwood's opinion concluding the following:

> As for the opinion evidence, the undersigned assigned limited weight to the opinion of Mr. Yarwood that [Nofsker] is

expected to be off-task [ten] to 15 [percent] of the time due to her medications. Neither his treatment records nor records from other treating sources support the claimant is off-task this often. (Exhibit B34F). His treatment records indicate diabetes with some nausea and vomiting in January 2019; this was not noted in his previous records and looks to be an acute issue. His records note diabetes, diabetic polyneuropathy, and she does not comply with taking her diabetes medications (Exhibit B33F); neither this nor his remaining treatment records support his conclusions at Exhibit B34F.

The ALJ further concluded:

> [Mr.] Yarwood indicated the claimant's medications will interfere with the claimant's effectiveness in a work setting but the claimant has frequently denied medication side-effects. When she has had side effects, she discontinued the medication. He noted pain affects adequate performance of activities of daily living but the claimant's pain management providers recommended the claimant be as active as she can and it is recommended she also stay active to help keep [her] diabetes under better control. Her pain management providers indicated she remained active (Exhibits B34F, B38F, and B26F). As such, [Mr.] Yarwood's opinions are not supported and they are inconsistent with the record.

(Tr. 863).

Nofsker argues, however, that the ALJ's rationale is not supported by the record evidence. (Doc. 17, at 11). Particularly, Nofsker contends that even assuming she was "as active as possible," as recommended by her doctors, the record evidence does not demonstrate that she would be able to get through a workday or workweek without excessive breaks and

off-task behavior. (*Id.*). Nofsker further contends that in discounting Mr. Yarwood's opinion, the ALJ provides no evidentiary support, and ignores relevant and probative evidence. (Doc. 17, at 12).

In response, the Commissioner argues that the power to accept or reject evidence in light of the broad record, belongs to the ALJ, not to treating or other physicians. (Doc. 18, at 19). The Commissioner further asserts that because the ALJ considered Mr. Yarwood's opinion and valid reasons were provided in affording his opinion limited weight, the ALJ complied with the governing law and regulations. (Doc. 18, at 22-23). The Commissioner contends that the ALJ acted within her defined authority and the Court should defer to the Commissioner's conclusions. (Doc. 18, at 23).

Here, the ALJ considered the opinion of physician assistant, Mr. Yarwood and afforded his opinion limited weight. (Tr. 862-63). The ALJ reasoned that neither Mr. Yarwood's treatment records nor records from other treating sources support that Nofsker would be off-task ten to 15 percent of the time due to her medications. (Tr. 862). Additionally, the ALJ explained that Mr. Yarwood's treatment records indicate that Nofsker suffers from diabetes and experienced some nausea and vomiting

in January 2019. (*Id*.). However, this was not noted in Mr. Yarwood's previous records and looks to be an acute issue. (*Id*.). Further, the ALJ explained that Mr. Yarwood's treatment records note diabetes, diabetic polyneuropathy, and that Nofsker does not comply with taking her diabetes medications. (*Id*.). However, Mr. Yarwood's treatment records do not support this conclusion. (*Id*.).

Moreover, the ALJ reasoned that Mr. Yarwood indicated that Nofsker's medications would interfere with her effectiveness in a work-setting, but that Nofsker has frequently denied medication side-effects. (*Id*.). The ALJ also explained that when Nofsker experienced side-effects from her medication, she discontinued that medication. (*Id*.). Further, Mr. Yarwood noted pain affects adequate performance of activities of daily living, but Nofsker's pain management providers recommended that Nofsker be as active as possible and it was recommended that Nofsker also stay active to help keep her diabetes under better control. (*Id*.). Nofsker's pain management providers further stated that Nofsker remained relatively active. (Tr. 862-63). Therefore, the ALJ concluded that Mr. Yarwood's opinions were inconsistent and unsupported by the record evidence and afforded his opinion limited weight.

In pertinent part, Nofsker argues that the ALJ ignored relevant and probative record evidence, which supports Mr. Yarwood's opinion. (Doc. 17, at 12). For instance, Nofsker asserts that the ALJ references a February 2013 evaluation, where neurosurgeon Dr. Michael Sather "advised no further surgery is appropriate and recommended a spinal cord stimulator and weight loss," but failed to mention Dr. Sather's clinical findings of trace deep tendon reflexes (DTR's) at the patella and absent DTR's at the Achilles; pain in the hamstrings with straight leg raising; and diminished range of motion in the lumbar spine. (Doc. 17, at 12). Additionally, Nofsker asserts that the ALJ "cherry-picks" evidence from her October 2013 visit with Dr. Han, indicating that Nofsker had a normal gait and strength, while ignoring clinical findings of tenderness to palpation in the lumbar paraspinal regions bilaterally; bilateral sacroiliac tenderness; bilateral upper buttock tenderness; and painful lumbar flexion and extension. (Doc. 17, at 13).

Moreover, Nofsker contends that the ALJ ignored other evidence of record, which was consistent with Mr. Yarwood's opinion. For example, Nofsker asserts that the ALJ ignored evidence from her pain management specialist, Dr. Kalyan Krishman from May 2014,

demonstrating bilateral lower extremity edema and diffuse palpable pain in her lower back; that the ALJ ignored physical therapy records from the period of June 2014 to September 2014, demonstrating that she did not meet her goals of increasing range of motion, strength, or hamstring flexibility; and that the ALJ overlooked treatment notes from the medication therapy management clinic from 2013 through 2015, which demonstrated that she consistently complained of severe pain, necessitating that her medications be adjusted in an unsuccessful effort to achieve pain relief. (Doc. 17, at 13-14).

In essence, Nofsker argues that the ALJ selectively relied on aspects of the medical record to support a finding of non-disability, while failing to appropriately account for aspects of the record that would support a contrary conclusion. (Doc. 17, at 9-14). The Commissioner asserts that the ALJ considered Mr. Yarwood's opinion and provided valid reasons in affording his opinion limited weight in compliance with the governing law and regulations. (Doc. 18, at 22-23).

The Court is not persuaded by the Commissioner's argument as to this issue. "Although we do not expect the ALJ to make reference to every relevant treatment note . . . we do expect the ALJ, as the factfinder, to

consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *see also Gleason*, 152 F. Supp.3d at 386. The ALJ may accept some aspects of the medical evidence and reject other aspects, but must consider all the evidence and give some reason for discounting the rejected evidence. *See Adorno*, 40 F.3d at 48; *see also Fargnoli*, 247 F.3d at 42; *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 435 (3d Cir. 1999); *Gleason*, 152 F. Supp.3d at 386.

As mentioned above, the ALJ cannot rely only on the evidence that supports the ALJ's conclusion, but must weigh all relevant, probative, and available evidence; and the ALJ must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. *Adorno*, 40 F.3d at 48; *Cotter*, 642 F.2d at 705. In the instant case, the ALJ ignored relevant and probative evidence, which supports Nofsker's contentions of acute pain; the ALJ ignored objective medical findings, which substantiated Nofsker's debilitating medical conditions and subjective complaints of pain; and the ALJ ignored Nofsker's unsuccessful efforts to achieve pain relief.  Therefore, the Court finds that the ALJ's consideration of Mr. Yarwood's opinion is not supported by

substantial evidence.

## 2. *Mr. Mlyneck's Third Party Opinions*

Next, Nofsker argues that the ALJ erred in rejecting the testimony of her ex-husband, Mr. Mlyneck. (Doc. 17, at 16-17). Specifically, Nofsker contends that the ALJ mischaracterized the third-party opinion of Mr. Mlyneck. (Doc. 17, at 16). Nofsker asserts that Mr. Mlyneck served as a corroborating lay witness. (*Id.*). Thus, Mr. Mlyneck's function report served to impart his observations of Nofsker's functional abilities. (*Id.*). The ALJ, however, discounted Mr. Mlyneck's opinion concluding:

> [Mr. Mlyneck] noted and testified regarding [Nofsker's] subjective complaints and advised she had a number of limitations based on her subjective reports. However, [Mr. Mlyneck] did not provide any support for his proposed functional limitations or testimony in terms of signs or laboratory findings and the actual objective findings from various medical sources do not support the degree of limitations noted by [Nofsker's] husband. As such, [Mr. Mlyneck's] opinions are inconsistent with [Nofsker's] treatment records and given limited weight.

(Tr. 863).

Nofsker contends that Mr. Mlyneck's third-party opinions were not intended to serve as medical evidence. (*Id.*). Rather, Nofsker asserts that Mr. Mlyneck's statements were intended to provide observations that any lay person is capable of making regarding Nofsker's daily activities,

- 27 -

reactions to pain and stress, and her ability to interact with others. (*Id.*).

Thus, Nofsker maintains that the ALJ's rationale for discounting Mr.

Mlyneck's third-party statements is inappropriate under the regulations

governing a lay witness. (*Id.*).

In response, the Commissioner argues that Nofsker's challenge to

the ALJ's consideration of Mr. Mlyneck's third-party opinions is without

merit. (Doc. 18, at 24). The Commissioner asserts that the controlling

regulations do not require the ALJ to consider lay witness evidence

submitted by a claimant. (*Id.*).

Observations of a claimant made in third-party lay statements are

valid sources for an ALJ to consider. *Gleason*, 152 F. Supp.3d at 393. SSR

16-3p states:

> Other sources may provide information from which
> [adjudicators] may draw inferences and conclusions about an
> individual's statements that would be helpful to
> [adjudicators] in assessing the intensity, persistence, and
> limiting effects of symptoms. Examples of such sources
> include public and private agencies, other practitioners,
> educational personnel, non-medical sources such as family
> and friends, and agency personnel. [Adjudicators] will
> consider any statements in the record noted by agency
> personnel who previously interviewed the individual, whether
> in person or by telephone. The adjudicator will consider any
> personal observations of the individual in terms of how
> consistent those observations are with the [claimant's]
> statements about his or her symptoms as well as with all of

the evidence in the file.

*See* SSR 16-3p, 2017 WL 5180304 at *7; *see also* 20 C.F.R. § 1527(f)(1); 20

C.F.R. § 416.927(f)(1).

In this case, the ALJ considered the lay opinion of Mr. Mlyneck,

Nofsker's ex-husband, and afforded his opinion limited weight. (Tr. 863).

The ALJ explained that Mlyneck noted and testified regarding Nofsker's

subjective complaints and advised that she had a number of limitations

based on her subjective reports. (*Id.*). The ALJ concluded, however, that

Mr. Mlyneck did not provide any support for his proposed functional

limitations or testimony in terms of signs or laboratory findings and the

actual objective findings from various medical sources did not support

the degree of limitations noted by Mr. Mlyneck. (*Id.*). Accordingly, the

ALJ afforded limited weight to Nofsker's opinion.

Nofsker argues that the ALJ's rationale for discounting Mr.

Mlyneck's opinion is impermissible under the regulations governing a lay

witness. (*Id.*). Specifically, Nofsker contends that Mr. Mlyneck's third-

party opinions were not intended to serve as medical evidence. (*Id.*).

Rather, Mr. Mlyneck's statements were intended to provide observations

that any lay person is capable of making as to Nofsker's daily activities,

reactions to pain and stress, and her ability to interact with others. (*Id*.). To the contrary, the Commissioner argues that Nofsker's contentions on this score are without merit because the regulations do not require the ALJ to consider lay witness evidence submitted by a claimant. (*Id*.).

The Court is not persuaded by the Commissioner's argument as to this issue. As correctly asserted by Nofsker, Mr. Mlyneck's opinion should have been considered and was not intended to serve as a medical opinion or medical evidence. (Doc. 17, at 16). Rather, Mr. Mlyneck's opinion was intended to serve as a personal observation of Nofsker in terms of how consistent his observations were with Nofsker's statements about her symptoms in relation to the medical record as a whole. *See* SSR 16-3p, 2017 WL 5180304 at *7; *see also* 20 C.F.R. § 1527(f)(1); 20 C.F.R. § 416.927(f)(1). Thus, it is error for the ALJ to discount these third-party statements on the basis that they were not supported by "proposed functional limitations or testimony in terms of signs of laboratory findings." (Tr. 863).

Therefore, because the ALJ improperly considered the third-party statements of Mr. Mlyneck, the Court finds that the ALJ's decision as to this issue is not supported by substantial evidence.

### C. Substantial Evidence Does Not Support the ALJ's Evaluation of Nofsker's Credibility

Next, Nofsker argues that the ALJ erred in assessing her credibility. (Doc. 17, at 14-17). Specifically, Nofsker contends that the ALJ's rationale for rejecting her subjective complaints is legally erroneous, as the medical evidence of record supports her complaints of debilitating pain. (Doc. 17, at 15). Nofsker alleges that the ALJ overemphasized her ability to perform activities of daily living. (*Id*.). The ALJ concluded:

> [Nofsker] reported that she handles self[-]care, laundry, and cooking and then reported elsewhere that her daughter does everything, which shows an inconsistency in her subjective complaints. Exhibit B10/24 indicated [that Nofsker] spent her time doing housework, watching television, and playing on her computer. When examined, [Nofsker] had a normal gait and station and did not use an assistive device.

(Tr. 861).

Nofsker argues, however, that the specific treatment record that the ALJ references, does not account for how much housework she can perform, how often she watches TV or plays games, and thus, does not rise to the level of discrediting her allegations of disabling pain. (Doc. 17, at 15).

In response, the Commissioner argues that Nofsker's contentions on this score are without merit. (Doc, 18, at 23-26). The Commissioner asserts that the ALJ considered Nofsker's testimony and properly concluded that her subjective statements were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 18, at 23-24).

An ALJ must consider all of a claimant's symptoms in determining whether the claimant is disabled, including the claimant's pain. 20 C.F.R. § 404.1529(a). Statements about a claimant's pain, however, are not by themselves sufficient to establish that the claimant is disabled. (*Id*.). To establish disability, there must be objective medical evidence from an acceptable medical source showing that the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and that leads to the conclusion that the claimant is disabled when considered with the other evidence of record. (*Id*.).

An ALJ must conduct a two-step process in analyzing a claimant's pain or other symptoms. First, the ALJ must determine whether the claimant has "a medically determinable impairment that could

reasonably be expected to produce [the claimant's] symptoms, such as pain." *Id.* § 404.1529(b). Second, when the record shows that the claimant has a "medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms," the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" to determine how the symptoms limit the claimant's capacity for work. *Id.* § 404.1529(c)(1). "In evaluating the intensity and persistence" of a claimant's symptoms, the ALJ considers "all of the available evidence" from "medical sources and nonmedical sources" to determine how the symptoms affect the claimant. (*Id.*).

Here, the ALJ considered Nofsker's medically determinable impairments in determining whether she was disabled, including her lumbar degenerative disc disease, status post surgery, obesity, diabetes, polyneuropathy, depression, anxiety, and bilateral carpal tunnel syndrome. (Tr. 856-57). The ALJ, however, found that Nofsker's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Nofsker's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the

record. (Tr. 859).

On this issue, Nofsker argues that the ALJ's rationale for rejecting her subjective complaints is legally erroneous, as the record supports her complaints of debilitating pain. (Doc. 17, at 15). Specifically, Nofsker contends that the ALJ overemphasized her ability to perform her activities of daily living. (*Id*.). Nofsker argues that the ALJ solely relied on a September 2012 treatment record, which includes a statement that she "spends her time doing homework, watching TV, playing the computer," but also oversleeps at times and still awakes feeling tired. (*Id*.). Nofsker contends, however, that the treatment record, which the ALJ solely relies on in discounting her subjective complaints, does not fully account for how frequently she can perform her activities of daily living. (*Id*.). Nofsker further contends that the ALJ overlooked testimony that she handles some cooking duties, but only on her good days; that she cannot stand long enough to cook a meal; and that she can only fold laundry while sitting, but that's all that she can do in terms of house cleaning. (Doc. 17, at 15-16).

The Commissioner contends that Nofsker's argument is without merit, as the ALJ appropriately considered her testimony and concluded

that her subjective statements were not entirely consistent with the evidence of record. (Doc. 18, at 23-24).

The Court disagrees. Similar to Nofsker's first and second claim of error, it appears that the ALJ relies only on the evidence that supports her conclusion of non-disability, while rejecting and ignoring relevant, probative, and available record evidence, which suggests a contrary disposition. As stated above, the ALJ, as a factfinder, has an obligation "to consider and evaluate all of the medical evidence in the record consistent with his responsibilities under the regulations and case law." *See Fargnoli,* 247 F.3d at 42; *see also Gleason*, 152 F. Supp.3d at 386.

The Court of Appeals has long been concerned with ALJ opinions, which fail to properly consider, discuss, and weigh relevant medical evidence. *See Fargnoli*, 247 F.3d at 42; *see also Dobrowolsky v. Califano*, 606 F.2d 403, 406-07 (3d Cir. 1979). It is well-established that "where there is conflicting probative evidence in the record, there is an acute need for the ALJ to provide an explanation of the reasoning behind his or her conclusions, and the Court will vacate or remand a case where such an explanation is not provided. *Fargnoli*, 247 F.3d at 42; *Cotter*, 642 F.2d at 706.

In the present case, the ALJ afforded limited weight to Nofsker's subjective complaints, citing Nofsker's activities of daily living as a basis for her decision. In doing so, the ALJ failed to properly consider, discuss, and weigh relevant, contradictory medical evidence, including Nofsker's testimony that she handles some cooking duties, but only on her good days; that she cannot stand long enough to cook a meal; and that she can only fold laundry while sitting, but that's all that she can do in terms of house cleaning. (Tr. 181, 179-84). Because the ALJ disregarded this evidence, the Court finds that the ALJ's adverse credibility finding with regard to Nofsker's testimony is not supported by substantial evidence.

Accordingly, for the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. Thus, the decision of the Commissioner of Social Security will be **VACATED** and this case will be **REMANDED** for further proceedings consistent with this Memorandum.

An appropriate Order follows.

Dated: January 12, 2021          *s/Joseph F. Saporito, Jr.*
                                  JOSEPH F. SAPORITO, JR.
                                  United States Magistrate Judge